**CHOCTAW NATION**

v.

**UNITED STATES.**

No. 6–52.

United States Court of Claims.
May 4, 1954.

W. F. Semple, Tulsa, Okl., for appellant. Grady Lewis, Washington D. C., was on the brief.

Ralph A. Barney, Washington, D. C., with whom was James M. McInerney, Asst. Atty. Gen., for the appellee.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

This is an appeal from a decision of the Indian Claims Commission dismissing appellant's petition. Appellant seeks judgment against the United States in the amount of $753,609.41, which sum was disbursed by appellee during the period from July 1, 1898, to June 30, 1929, from appellant's funds then in the custody of appellee, for expenses incur-

red by appellee on behalf of the Choctaw Tribe incident to carrying out the provisions of the Atoka Agreement, 30 Stat. 495, and the Supplemental Agreement, 32 Stat. 641. The Indian Claims Commission held that the claim asserted (See the Commission's finding 6, Docket No. 55, June 11, 1951) had previously been considered and adjudicated on its merits, and that appellant was precluded by the former adjudication. The Commission further held that appellant was not entitled to recover on the merits, and dismissed the petition.

Appellant's petition was filed with the Commission under the provisions of clauses (3) and (5) of Section 2 of the Indian Claims Commission Act, 60 Stat. 1049, 25 U.S.C.A. § 70a, which gives to the Commission jurisdiction to hear and determine:

> "* * * (3) claims which would result if the treaties, contracts, and agreements between the claimant and the United States were revised on the ground of * * * mutual or unilateral mistake, whether of law or fact, * * * and (5) claims based upon fair and honorable dealings that are not recognized · by any existing rule of law or equity. * * *" 1

Appellant contends that the Atoka and Supplemental agreements were entered into under a unilateral or mutual mistake, that the understanding of appellant at the time of negotiation and ratification of the agreements was that appellee had, by the agreements, assumed the burden of payment of all expenses incident to the administration and the carrying out of the provisions of the agreements, and that but for such an understanding and belief appellant would not have entered into the agreements voluntarily.

The first question presented is whether or not the Indian Claims Commission was correct in holding that the decision of this court in Choctaw Nation v. United States, 91 Ct.Cl. 320, certiorari denied 312 U.S. 695, 61 S.Ct. 730, 85 L.Ed. 1130, was *res judicata.*

Congress, by Section 16 of the Act of March 3, 1893, 27 Stat. 612, 645, provided for the appointment of the Commission to the Five Civilized Tribes, familiarly known as the Dawes Commission, with the object of procuring through negotiations the extinguishment of the national or tribal title to the lands of these tribes in the Indian Territory, either by their cession to the United States in trust or allotment in severalty, in whole or in part, among the Indians, with a view to the ultimate creation of a state or states of the Union to embrace public lands within the Indian Territory. There were other reasons also which prompted Congress to take this action. Congress was concerned about the protection of the rights of the members of the tribe in the communal property.

Pursuant to the direction of Congress and the authority conferred upon it, the Dawes Commission on April 23, 1897, after a series of negotiations covering several years, arrived at an agreement, called the Atoka Agreement, with appellant which, as amended by Congress, was ratified by Section 29 of the Act of June 28, 1898, 30 Stat. 495, commonly known as the Curtis Act.

On March 21, 1902, representatives of the Choctaw Nation and the Dawes Commission negotiated a Supplemental Agreement, which was ratified by Congress by the Act of July 1, 1902, 32 Stat. 641.

The purposes designed and intended to be accomplished by the Atoka and Supplemental agreements were for the United States to take over the manage-

1. The Indian Claims Commission made no findings as to fair and honorable dealings, nor did the Commission in its opinion discuss whether or not appellant had been fairly and honorably dealt with. Appellant has not, in its brief to this court, complained of this action on the part of the Commission and we, therefore, assume that appellant has abandoned the contention of violation of the standard of fair and honorable dealings.

ment, control, and administration of the property, affairs, and funds of the tribe or nation theretofore exercised by the tribal government, to continue the tribal government only for limited purposes, and to administer and dispose of the property and funds of the Indians for their benefit and best interest.

The Atoka and Supplemental agreements contained many provisions as to the manner in which the lands and other property of the tribe should be handled, managed, and disposed of under the supervision and control of the United States for the benefit of the Indians. These agreements provided for the allotment of certain of the lands to members of the tribe,[2] the reservation from allotment of other lands, including coal and asphalt lands to be leased, managed, and operated for the tribe under the supervision of the Government; for the surveying, platting, and selling of certain town sites and lots, and the disposition of the proceeds from the sale of town lots to the members of the tribe *per capita*. There were a number of other detailed provisions designed to effect and carry out the many purposes intended to be accomplished for the benefit of the Indians. See Choctaw Nation v. United States, supra, 91 Ct.Cl. at pages 361–362.

The Atoka Agreement contained this provision: "That no charge or claim shall be made against the Choctaw or Chicasaw tribes by the United States for the expenses of surveying and platting the lands and town sites, or for grading, appraising, and allotting the lands, or for appraising and disposing of the town lots as herein provided." Other than this provision, neither the Atoka Agreement nor the Supplemental agreement contained any provision whereby the United States expressly agreed to assume and pay the expenses incident to the management, control, and disposition of unallotted and reserved lands and the

affairs and other property of the tribe as provided for in the agreements. There was nothing in the Supplemental agreement of 1902, and there is no substantial evidence that in the negotiation thereof the obligations of the Government as provided in the Atoka Agreement were enlarged.

Appellant's suit is to recover $753,-609.41 disbursed from its funds by appellee for necessary expenses incurred in carrying out the provisions of the Atoka and Supplemental agreements, other than the provision above quoted. All of the items constituting the present claim were included in a suit by appellant, plaintiff there, in this court under the jurisdictional Act of June 7, 1924, 43 Stat. 537, as amended by 44 Stat. 568 and 45 Stat. 1229, in which it was held that the appellant was not entitled to recover. Choctaw Nation v. United States, supra.

The Indian Claims Commission was of the opinion and appellee here contends that our prior decision is *res judicata*. That the parties and the subject matter in the two cases are identical is not disputed. Appellant's position is that it does not seek to relitigate the issue of whether or not the agreements imposed upon the United States the obligation to pay the expenses in question, but that it seeks to revise the agreements to so provide, on the ground of unilateral or mutual mistake as contained in clause (3) of Section 2 of the Indian Claims Commission Act, supra. Appellant contends that the question of unilateral or mutual mistake was not, and indeed could not have been, litigated in the earlier decision of this court, since at that time the right to the revision of a treaty or agreement on this or any other ground did not exist.

The question in the former case in this court was one of interpretation of the agreements, in the light of

2. The Supplemental agreement was negotiated before any allotments were made. It provided for the allotment to each member of the tribe of three hundred and twenty acres instead of the aliquot allotment provided for by the Atoka Agreement. Choctaw Nation v. United States, 318 U.S. 423, 426, 63 S.Ct. 672, 87 L.Ed. 877.

the evidence and contentions of the Choctaw Tribe as to the understanding of the Indians and the alleged representations of the representatives of the Government who negotiated the agreements with the tribe. There was involved nothing which required, as a condition to the entry of judgment in favor of the tribe, a revision of the agreements, and the claim was clearly one within our jurisdiction. The question, in the last analysis, was whether the plaintiff tribe in that case had submitted sufficient evidence, under the liberal rule of interpretation which we recognized, to clearly show that they had signed the agreements under a mistaken understanding as to who should bear the expenses of handling and administering the property and affairs of the tribe, or that the Commissioners representing the Government had made representations at the time of the negotiation of the agreements that had the effect of misleading the representatives of the Choctaw Tribe. Proof of a clear misunderstanding by the tribe or misrepresentations on the part of the Government is not different or more difficult than proof of a unilateral or mutual mistake which appellant now contends occurred. We do not think that the Indian Claims Commission Act intended that in issues so similar the rule of *res judicata* should be ignored and the same or substantially the same issues relitigated.

Appellee contends that not only are the parties and the subject matter identical, but that the issues sought to be litigated in the present proceeding have been decided previously by this court, and that the decision of this court on the merits of the case is therefore *res judicata*.

In the prior case appellant contended that the United States was obligated under the Atoka and Supplemental agreements to bear all expenses incident to carrying out the provisions of the agreements, and that any disbursements made from the funds of the Choctaw Nation for that purpose were illegal and hence must be refunded. The question before the court was thus one of interpretation of the agreements.

We cannot agree with the contention of appellant, *i. e.*, that it is not seeking in this case to relitigate the same issue or question presented and decided in 91 Ct.Cl. 320, supra. In the prior case this court had jurisdiction to determine the issue presented as to the propriety of the charges made by the Government against the funds of the Choctaw Tribe in the administration of the affairs and properties of the tribe. The court approached the question presented with the view that the Choctaw Tribe would be entitled to recover if the evidence presented by the tribe was sufficient to show that they had been misled or overreached in the making of the Atoka and Supplemental agreements; or if the tribe's evidence was sufficient to show that the authorized representatives of the Government had made representations to the tribe, at the time of negotiation of the agreements, upon which the tribe was at that time justified in relying as a promise that the Government would bear the costs and expenses involved. The court followed the well-recognized rule that treaties and agreements with Indian tribes should, upon the whole record, be liberally interpreted in favor of the Indians. We held in the prior case that the tribe had not established its claim. In cases such as this one brought before the Indian Claims Commission, claiming unilateral or mutual mistake, a prior decision of this court of the merits of the same question, involving only the interpretation of the agreement, weighing of the evidence, is *res judicata*. A prior decision is not *res judicata* if there was lack of jurisdiction or if revision of the treaty or agreement was necessary to a decision in favor of the Indian tribe. Osage Tribe v. United States, 66 Ct.Cl. 64; Osage Nations of Indians v. United States, 97 F.Supp. 381, 119 Ct.Cl. 592, 620 (on appeal).

When a court is confronted with the task of interpreting treaties and agreements with the Indians it must con-

strue the treaties and agreements, so far as possible, in the sense in which the Indians understood them, and in a spirit which generously recognizes the full obligation of this nation to protect the interests of a dependent people. Choctaw Nation v. United States, 318 U.S. 423, 431–432, 63 S.Ct. 672, 87 L.Ed. 877. Words used in treaties and agreements "must be construed, not according to their technical meaning, but 'in the sense in which they would naturally be understood by the Indians.' Jones v. Meehan, 175 U.S. 1, 11, 20 S.Ct. 1, 44 L.Ed. 49." Carpenter v. Shaw, 280 U.S. 363, 367, 50 S.Ct. 121, 122, 74 L.Ed. 478. But the intention and understanding of the Indians must be established by clear and satisfactory proof sufficient to warrant the application of that rule.

This court sought, in the light of the above long-established rules for the interpretation of Indian treaties and agreements, the real intention of the parties to the Atoka and Supplemental Agreements. We stated, 91 Ct.Cl. at pages 369–370 of our opinion:

"It is the duty of the court, in order to decide upon the meaning of a written instrument, to look not only to the language employed but to the subject-matter and the surrounding circumstances. In Sacramento Navigation Co. v. Salz, 273 U.S. 326 [47 S.Ct. 368, 71 L.Ed. 663], it was held that a contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it is made. Smith v. Bell, 6 Pet. 68 [8 L.Ed. 322]; Nash v. Towne, 5 Wall. 689 [18 L.Ed. 527]; Chicago, Rock Island & Pacific Ry. Co. v. Denver & Rio Grande R. R. Co., 143 U.S. 596 [12 S.Ct. 479, 36 L.Ed. 277]. The intent of the contract must be deduced from the entire instrument, from its subject-matter from the purpose of its execution, and the cir-

cumstances of the parties when they made it must prevail over any careless recitals therein, unless the intent so gathered runs counter to the plain sense of the binding words of the agreement. U. S. Fidelity & Guaranty Co. v. Board of Woodson County, Kan. [8 Cir.], 145 F. 144; Hawkeye Commercial Men's Ass'n v. Christy [8 Cir.], 294 F. 208 [40 A.L.R. 46]; U. S. Fidelity & Guaranty Co. v. French Mut. Gen. Society of Mut. Ins. against Theft [4 Cir.], 212 F. 620; Knowlton v. Oliver [C.C.], 28 F. 516."

In the prior case this court examined and considered all of the facts then before it relating to the intent and understanding of the parties, in an effort to interpret properly the language which they had used. Guided by the above precepts, and after full consideration, we concluded that the understanding of the representatives of the tribe and the real intention of the parties to the agreements was, and that they therefore contemplated and understood, that the Choctaw Nation was to bear the burden of payment from its funds of the expenses there and here in suit.

We think that this decision as to a fact which was material to the issues then before us precludes appellant from again litigating the issue, notwithstanding the passage of Section 2 of the Indian Claims Commission Act, supra. We are of the opinion that the Indian Claims Commission rightly held that the claim asserted before it had previously been considered and adjudicated on its merits, and that the prior decision was res judicata.

This conclusion affords a sufficient basis for affirmance of the decision of the Indian Claims Commission. However, the Commission also considered appellant's claim upon the merits and held in its findings and opinion that such claim was not sustained by the evidence presented.

Findings 13 and 14 of the Commission are as follows:

**212**

"13.   Considering the entire record in the case, the evidence is not sufficient to establish that in the negotiations leading to the execution of the Atoka and Supplemental Agreements representations were made to the effect that the defendant would assume the payment of any expenses other than those as set out in said Agreements, as construed by the Court of Claims in the Choctaw case herein previously mentioned.

"14.   Considering the entire record in the case, as presented herein, the evidence is not sufficient (1) to establish duress or coercion on the part of the Commissioners who negotiated the Atoka and Supplemental Agreements, or (2) that there was any mutual mistake of law and fact between one party and the other, or (3) that there was a mutual mistake of law, or (4) that the Choctaw Indians did not understand the meaning and intent of the parties to the Agreements, or (5) that the language used in said Agreements with reference to the expenses to be borne by the defendant was intended to include the expenses for which suit is brought, or (6) to justify the belief on the part of any of the members of petitioner tribe that the defendant contemplated or intended to bear any of the expenses for which suit is brought."

The Commission also found that the Choctaw delegates who participated in negotiations leading to the execution of the Atoka and Supplemental agreements were highly educated and extremely capable men.

We find from a study of the record on appeal and the briefs and argument of counsel that the findings and conclusions of the Commission, as to the merits of appellant's claim, are supported by substantial evidence.

The decision of the Commission dismissing appellant's petition is, therefore, affirmed on the grounds herein stated.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.