David **RUSSELL**, Plaintiff,

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 90–446.**

United States District Court, District of Columbia.

Sept. 25, 1990.

David Fishman, Washington, D.C., for plaintiff.

Janet Maher, Asst. Corp. Counsel, Mental Health Div., St. Elizabeths Hosp., Washington, D.C., for defendants.

## MEMORANDUM OPINION

### THOMAS F. HOGAN, District Judge.

Before the Court is defendants' motion to dismiss or, in the alternative, for summary judgment on Counts II through VII of plaintiff's amended complaint. Having considered the motion and supporting affidavits, the opposition and supporting affidavits, the hearing held on September 5, 1990, and the reasons set forth below, the Court shall deny defendants motion with respect to Counts II and IV, and shall grant defendant's motion with respect to Counts III, V, VI, and VII.

### DISCUSSION

On July 2, 1987, The United States Department of Health and Human Services hired David Russell, a white male, as a temporary fire fighter at St. Elizabeths Hospital (SEH). Mr. Russell's temporary appointment ended on September 30, 1987, the day before control of SEH was transferred from the United States to the District of Columbia pursuant to the St. Elizabeths Hospital and District of Columbia Mental Health Services Act, Pub.L. No. 98–621, 98 Stat. 3369 (codified at 24 U.S.C. § 225 et seq. (1988)). Since the transfer, the Commission on Mental Health Services (CMHS) has operated SEH. On October 1, 1987, the CMHS hired Mr. Russell as a temporary fire fighter for a term of 12 months, to expire September 30, 1988. On September 29, 1988, CMHS hired Mr. Russell for another term appointment, this time for 13 months, to expire October 25, 1989. A "Personnel Action" form was completed for each of Mr. Russell's appointments.

In the spring of 1989, the CMHS made a policy decision not to extend term appointments without competition. Sometime after this decision was made, a vacancy announcement was posted for several CMHS fire fighter positions.[1] The announcement indicated, rather ambiguously, an "Opening Date" of June 19, 1989, a "Closing Date" of August 19, 1989, and an "If 'Open Until

Filled,' First Screening Date" of June 2, 1989 and every two weeks thereafter. Defendants have not explained how a vacancy announcement can at once have a closing date *and* be "open until filled." At any rate, Mr. Russell submitted his application for one of the posted positions on July 26, 1990, well before the closing date. Mr. Russell was not selected for any of the vacant fire fighter positions. Defendants now assert that by the time Mr. Russell filed his application on July 26, 1990, all of the fire fighter positions had been filled. Defendants' Memorandum in Support of Motion to Dismiss or for Summary Judgment (Defendants' Memorandum) at 5. On October 13, 1989, the Commissioner of the CMHS, Robert A. Washington, Ph.D., wrote to Mr. Russell advising him that his term appointment would expire on October 25, 1989 and would not be renewed. Mr. Russell's last day on the job was October 25, 1989.

During his tenure as a fire fighter at SEH, Mr. Russell played an active role in reporting what he and other fire fighters perceived as "problems" in the transition between federal and local control of SEH. Following the transfer, the fire fighters working at SEH became employees of the CMHS although the District of Columbia Fire Department (DCFD) was given administrative responsibility for them. In August 1989 this relationship ended and administrative control reverted to the CMHS. Although the Court does not at this point know the full extent of Mr. Russell's reporting activities, it is aware that Mr. Russell was in contact with the news media and various congressional offices. He also testified before the CMHS and the House Appropriations Committee for the District of Columbia. In addition, Mr. Russell filed two petitions with the District of Columbia Public Employee Relations Board concerning a possible change of bargaining unions for the fire fighters.

Just prior to the expiration of his term of employment at SEH, Mr. Russell filed a

---

**1.** It is disputed whether defendants gave Mr. Russell prior notice of the policy change or the posting of vacancies.

formal charge of discrimination with the District of Columbia Human Rights Commission and the Equal Employment Opportunity Commission (EEOC) alleging racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Several months later, Mr. Russell filed suit in this Court, alleging racial discrimination and retaliation in violation of 42 U.S.C. § 1981, retaliation in violation of 42 U.S.C. § 1983, breach of the St. Elizabeths Hospital and District of Columbia Mental Health Services Act, 24 U.S.C. § 225 et seq. (1988), breach of contract, and intentional infliction of emotional distress. On April 6, 1990, Mr. Russell received a "Notice of Right to Sue" from the EEOC and amended his complaint accordingly to include the Title VII claim. Defendants moved to dismiss or for summary judgment with respect to all but the Title VII claims. Because the motion presents matters outside the pleadings, the motion shall be treated as one for summary judgment in accordance with rule 12(b) of the Federal Rules of Civil Procedure.

## A. *Plaintiff's § 1981 Claims*

Defendants have moved to dismiss Counts II and III of plaintiff's amended complaint, which allege racial discrimination (Count II) and retaliation (Count III) in violation of 42 U.S.C. § 1981. Defendants move to dismiss on two grounds: that Mr. Russell fails to state a claim upon which relief can be granted and that after *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), § 1981 does not provide relief for the discriminatory and retaliatory action that Mr. Russell alleges. The Court will consider these arguments in turn.

### 1. Failure to State a Claim

The United States Supreme Court long ago established the level of pleading required for a complaint to survive a motion to dismiss. In *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) the Supreme Court held that a complaint must provide the defendants with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." The federal

courts of appeals have expounded upon this standard in civil rights cases, *see e.g., Albert v. Carovano,* 824 F.2d 1333, 1341 (2d Cir.1987) (requiring more than "mere naked assertions" of discriminatory intent); *Fisher v. Flynn,* 598 F.2d 663, 665 (1st Cir.1979) (requiring more than simple conclusions); however, the primary requirement remains that the allegations in a civil rights complaint must "be sufficiently precise to put defendants on notice of the nature of the claim and enable them to prepare a response...." *Hobson v. Wilson,* 737 F.2d 1, 29 (D.C.Cir.1984), *cert. denied, Brennan v. Hobson,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

Mr. Russell's complaint meets this standard. It alleges that the defendants "denied him promotion, transfer and career advancement opportunities, have relieved him of duties and responsibilities previously assigned him, have falsely charged him with misconduct, and threatened and ultimately brought about his discharge" on account of his race and in retaliation for his protests against racial discrimination. Amended Complaint at 4–6. Mr. Russell further details the alleged discriminatory conduct in his opposition to defendants' motion and accompanying affidavits (Plaintiff's Opposition). Clearly, defendants were put on "notice of the nature of the claim" and have been able "to prepare a response." Indeed, they were not only able to prepare a response, but also a lengthy motion for summary judgment. Accordingly, Mr. Russell has met his burden of stating a claim upon which relief can be granted under rule 8(a)(2) of the Federal Rules of Civil Procedure.

### 2. Section 1981 after *Patterson*

The United States Supreme Court recently made clear that § 1981 does not provide relief for racial harassment or discrimination in the conditions of employment. *See Patterson,* 109 S.Ct. at 2372–73. Rather, § 1981 "prohibits discrimination only in the making and enforcement of contracts." *Id.* at 2372. Thus, "the statute prohibits, when based on race, the refusal to enter into a contract with someone." *Id.* It also

prohibits "conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights." *Id.* at 2373. For the reasons that follow, this Court holds that Count II of Mr. Russell's complaint states a cognizable claim of discrimination in the making of a contract, but that Count III does not state a claim of discrimination in either the making or enforcing of a contract.

Although *Patterson* did not directly address the issue, a number of courts deciding cases in its wake, including this Court, have concluded that discriminatory discharge, although actionable under Title VII, is not actionable under § 1981. *See McKnight v. General Motors Corp.*, 908 F.2d 104, 109 (7th Cir.1990); *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805, 807–08 (5th Cir.1990), *Overby v. Chevron USA, Inc.*, 884 F.2d 470 (9th Cir. 1989), *Donnie R. Tuck v. Pro Football, Inc.*, No. 89–2681, 1990 WL 102792 (D.D.C. July 10, 1990); *Brereton v. Communications Satellite Corp.*, 735 F.Supp. 1085, 1088 (D.D.C.1990). *But see Hicks v. Brown Group, Inc.*, 902 F.2d 630, 638–42 (8th Cir.1990) (holding that "[b]ecause protection from racially motivated deprivations of contracts is essential to the full enjoyment of the right to *make* contracts," discriminatory discharge remains actionable under § 1981) (emphasis in original). In this case, both parties have at times referred to Mr. Russell's termination as a "discharge." Nevertheless, the facts show that the CMHS did not "discharge" Mr. Russell midway through his term of employment; rather, the CMHS refused to hire Mr. Russell for another term as a fire fighter when his stated term expired. Thus, the CMHS "refus[ed] to enter a contract" with Mr. Russell, allegedly on the basis on Mr. Russell's race.[2]

In addition to alleging that the CMHS rejected his application because of his race, Mr. Russell alleges the CMHS refused to upgrade him to permanent status or to transfer him to a position within the District of Columbia Fire Department because of his race. Although *Patterson* foreclosed § 1981 actions for postformation discrimination, it did not foreclose relief for discriminatory failure to promote. To be actionable under § 1981 depends upon "whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Patterson*, 109 S.Ct. at 2377. Moreover, "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981." *Id.* This fact-specific determination requires the court to compare a plaintiff's current or former position to that which plaintiff alleges he or she would have been promoted to absent racial discrimination. *See Brereton*, 735 F.Supp. at 1089. The record thus far does not contain specific information about the positions Mr. Russell alleges he would have obtained had he not been white, therefore it is impossible for the Court to determine whether Mr. Russell has fulfilled the Supreme Court's "new and distinct relationship" test. Because there are genuine issues of material fact regarding 1) whether the CMHS rejected Mr. Russell's July 26, 1990 application for a term position as a fire fighter at SEH because of his race and 2) whether the CMHS refused to promote or transfer Mr. Russell because of his race, this Court denies defendants' motion for summary judgment on Count II.

In Count III, Mr. Russell alleges that defendants violated § 1981 by retaliating against him for his protests against the CMHS's alleged discrimination against him-

---

**2.** Mr. Russell's situation is not like that of the plaintiffs in *Brereton*, who, as at-will employees, argued that "an at-will employee ... is not only performing under an existing contract but also is constantly 'remaking' a new contract so that whenever the employee is discriminatorily terminated, the employer has impaired his or her right to 'make' a contract in violation of

§ 1981." 735 F.Supp. at 1088. Mr. Russell's term of employment expired on October 25, 1990. He applied for a vacant position and he was rejected for that position. The at-will employee, by contrast, does not file an application at the end of each day to be hired for the next day.

self and other white fire fighters. Mr. Russell's pleadings and affidavits indicate he was vocal in protesting the CMHS's policies for carrying out the transfer from federal to local control and that he fought against the alleged discrepancy between the pay, benefits, and career opportunities of SEH fire fighters and DCFD fire fighters. Mr. Russell also complained of racial discrimination in an informal grievance filed with an EEO official on October 26, 1989, and in a formal EEO complaint filed November 17, 1989. *See* Plaintiff's Opposition, Exhibit 11.

To evaluate Mr. Russell's claim that the CMHS refused to rehire him as a fire fighter or hire him as a dispatcher (a position he applied for after his termination), again the Court must look to *Patterson* for guidance. In *Patterson,* the Supreme Court held that "[t]he right to enforce contracts does not ... extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process *his or her established contract rights.*" 109 S.Ct. at 2373 (emphasis added). The United States Court of Appeals for the Seventh Circuit has attempted to clarify, stating that "[r]etaliation or a threat to retaliate is a common method of deterrence, and *if what is sought to be deterred is the enforcement of a contractual right,* then, we may assume, the retaliation or threat is actionable under section 1981 as interpreted in *Patterson,* provided that the retaliation had a racial motivation." *McKnight v. General Motors Corp.,* 908 F.2d 104, 111 (7th Cir. 1990) (emphasis added) *citing Malhotra v. Cotter & Co.,* 885 F.2d 1305, 1313 (7th Cir.1989). Thus, to determine whether Mr. Russell has stated a § 1981 claim for retaliation, we must determine whether he had a contractual right to enforce. In his EEO complaint, Mr. Russell did not seek to enforce contractual rights such as "collecting wages due, enforcing pension rights, enforcing a "just cause" provision in a collective bargaining agreement or seniority rights in such an agreement," *see McKnight,* 908 F.2d at 112; rather, he

sought "to enforce his rights under antidiscrimination laws." *Id.; see also Sherman v. Burke,* 891 F.2d 1527, 1535 (11th Cir. 1990) (no impairment of employee's ability to enforce contract rights when employee's EEOC complaint was not related to any right created by his employment contract). In short, this Court cannot find any contractual rights that Mr. Russell had to enforce. The antidiscrimination laws, such as § 1981 and Title VII, do not create *contract* rights. *See McKnight,* 908 F.2d at 112. An employer is bound by the Constitution—not by contract—not to discriminate on the basis of race.

By reading § 1981 narrowly with respect to retaliation claims, this Court respects the Supreme Court's language in *Patterson* admonishing against "unnecessary overlap between Title VII and § 1981" which would "serve to upset the delicate balance between employee and employer rights struck by Title VII." *Patterson,* 109 S.Ct. at 2375 n. 4. Title VII provides for plaintiffs to bring claims of retaliation for engaging in a statutorily protected activity such as protesting racial discrimination.[3] Mr. Russell's claims of retaliation have thus been preserved in his Title VII claim (Count I of the Amended Complaint) and the Court, by holding as it does, has "preserve[d] the integrity of Title VII's procedures without sacrificing any significant coverage of the civil rights laws." *Id.* at 2375. For these reasons, this Court holds that Mr. Russell has not stated a claim of retaliation in violation of § 1981 and grants defendants' motion for summary judgment on Count III.

### B. *Plaintiff's § 1983 Claims*

 Section 1983, enacted along with § 1981 as part of the Civil Rights Act of 1866, prohibits state action that deprives a person of a federal right. In Count IV, Mr. Russell alleges that he was retaliated against for "express[ing] his views on matters of public concern," a right clearly protected by the first amendment to the Con-

---

3. The Court notes that at least one circuit has concluded that Title VII provides the exclusive remedy for claims of retaliation occurring after

the contractual relationship has terminated. *See Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1534–35 (11th Cir.1990).

**78**

stitution. Amended Complaint at 6. Defendants argue first that Mr. Russell's speech related to "personnel and office policy issues and not matters of public concern," and therefore is not protected. Defendants' Memorandum at 18. Defendants then argue that even if Mr. Russell's speech was on a matter of public concern, the governmental interests in the efficient functioning of the CMHS outweighed Mr. Russell's speech interest. *Id.* Finally, defendants argue that Mr. Russell cannot establish that retaliation for the exercise of his first amendment rights was the motivating factor behind the CMHS's refusal to rehire him. *Id.* at 22.

The Court need not analyze all of the defendants' arguments because it is clear that there is a genuine issue of material fact whether Mr. Russell's speech related to a matter of public concern. Mr. Russell argues that his speech, through which he argued for the integration of the SEH fire fighters and the DCFD and "publicly and repeatedly expressed concern about the risk of harm to the health and safety of the public" was indeed protected. Plaintiff's Opposition at 7. The affidavits submitted by Mr. Russell support his argument. Because Mr. Russell has presented the Court with " 'specific facts showing that there is a *genuine issue for trial,*'" *Matsushita Elec. Industrial Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted) (emphasis in original), the Court denies defendants' motion for summary judgment with respect to Count IV. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1987); *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### C. *Plaintiff's Claim for Violation of 24 U.S.C. § 225*

■■ The Saint Elizabeths Hospital and District of Columbia Mental Health Services Act (Mental Health Services Act), Pub.L. No. 98–621, 98 Stat. 3369 (codified at 24 U.S.C. § 225 et seq. (1988)), was enacted on November 8, 1984 to govern the transfer of control of SEH from the federal government to the District of Columbia. Section 225d specifies the procedures for SEH employees to become District employees, providing them with a "right-of-first-refusal to District employment in positions for which such employees may qualify." § 225d(c)(1). Count V of Mr. Russell's complaint alleges the defendants violated the Act "with respect to [p]laintiff's rights as an employee of the Hospital as of October 1, 1987 and subsequently." Amended Complaint at 7. To the extent this vague assertion alleges a violation of Mr. Russell's right-of-first-refusal, Mr. Russell's remedy was to seek administrative redress through the Act's express provision: "Employee appeals concerning employment offers by the District shall be in accordance with the District of Columbia Government Comprehensive Merit Personnel Act of 1978." (CMPA) § 225d(c)(4). The Court is not free to imply private remedies when Congress has provided an express remedy. *See Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979) ("it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it").

To the extent Mr. Russell's amended complaint alleges violations of § 225e of the Act, related to conditions of employment, the Court is similarly constrained not to imply a private right of action.[4] The Mental Health Services Act was intended to facilitate the transfer of control "with maximum consideration for the interests of employees of the Hospital." 24 U.S.C. § 225. The provisions of § 225e, providing for former hospital employees to receive the same salary and benefits as District employees, indicate Congress' intent that the former hospital employees be treated the same as District employees. These em-

---

**4.** At no point in his amended complaint does Mr. Russell state which provisions of the Mental Health Services Act were allegedly violated. The Court, viewing the pleadings most favorably to Mr. Russell, has attempted to determine which of the Act's provisions Mr. Russell is referring to.

ployees must seek redress for grievances and adverse actions according to the provisions of the CMPA. *See* D.C.Code Ann. § 1–617.1—1–617.2 (1987). Mr. Russell, as an employee of the District of Columbia, should have availed himself of the remedies provided in the CMPA. To imply a private right of action under § 225e of the Mental Health Services Act would be directly contrary to Congress' intent to accord former hospital employees with the same rights and responsibilities as District employees. Because there is no implied private right of action under the Mental Health Services Act, the Court grants defendants' motion for summary judgment on Count V of plaintiff's amended complaint.[5]

### D. *Plaintiff's Claim for Common Law Breach of Contract*

■ In Count VI, Mr. Russell alleges that defendants breached the contract of employment created by the Mental Health Services Act and the CMPA. As the Court has already noted, the Act gives SEH employees a right-of-first-refusal for District positions for which they qualify and provides a remedy for employees who have a complaint about the enforcement of this right. The plain language of the statute creates no absolute right to District employment and no contract of employment. If the Court were to read an implied contract into the language of the Mental Health Services Act, there is no reason why every statute that grants a right should not be read that way. The effect would be widespread—hundreds of statutes would be interpreted to create legally enforceable contract rights. Certainly this could not have been Congress' intent. Thus, for the same reasons that the plain language of the Act cannot be read to

create an implied private right of action, it cannot be read to create a contract of employment.

■ Mr. Russell also alleges, in his opposition to defendants' motion, that defendants breached an oral contract that he would be converted from temporary to permanent status. Mr. Russell alleges that a few days before the transition of SEH from federal to District control, District of Columbia Mayor Marion Barry addressed a crowd of SEH employees and stated that "all temporaries would be converted to permanent status." Plaintiff's Opposition, Exhibit 1, at 1. Mr. Russell alleges that Mayor Barry's promise was referred to in written correspondence from the president of the American Federation of State and County Municipal Employees (AFSCME) to the commissioner of CMHS, Dr. Washington. Moreover, Mr. Russell alleges that Dr. Washington acknowledged at a meeting with SEH fire fighters that he recalled Mayor Barry's statement and "would take steps to address the oversight." Plaintiff's Opposition, Exhibit 6. This is the extent of evidence offered by Mr. Russell to establish his claim of an oral contract.

The United States Court of Appeals for the District of Columbia has held that an oral contract for permanent employment is not barred by the District statute of frauds and is therefore enforceable in the District of Columbia. *Hodge v. Evans Financial Corp.*, 823 F.2d 559, 563–65 (D.C.1987). However, Mr. Russell does not allege he had entered an oral contract for permanent employment; rather, he alleges that the mayor promised he would be converted to permanent employment *in the future*. For this promise to create a valid contract, the

---

5. Mr. Russell argues that he was "deprived of the opportunity to utilize District of Columbia Government procedures to obtain resolution of his concerns," *see* Plaintiff's Opposition at 11, because the Public Employee Relations Board dismissed his complaint for lack of standing. Mr. Russell's reliance on this decision is misplaced. Mr. Russell's complaint before the Board alleged that the CMHS violated the CMPA, D.C.Code Ann. § 1–618.4(a)(5), by entering a memorandum of understanding that affected the working conditions of the SEH fire-

fighters without bargaining with the fire fighters' exclusive representative. The Board dismissed the complaint because it interpreted § 1–618.4(a)(5) to confer standing upon the exclusive representative only. The case at bar involves totally unrelated claims of racial discrimination and retaliation. Mr. Russell never alleges that he attempted to bring these claims pursuant to the CMPA grievance procedures and was "deprived of the opportunity" to use those procedures.

parties must have engaged in "a bargain in which there [was] a manifestation of mutual assent to the exchange and a consideration." *Restatement (Second) of Contracts,* § 17(1) (1981). For the parties to have manifested their mutual assent, they must have exchanged promises. *See id.* at § 18. The *Restatement* defines a promise as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.* at § 2(1).

■ In analyzing Mr. Russell's claim of oral contract, the Court must determine whether Mr. Russell was "justified" in understanding that Mayor Barry was making a legally enforceable promise by stating to a crowd of SEH employees that all temporaries would be made permanent. To do so, the Court must look at the context of the mayor's statement. *See Ottenberg v. Ottenberg,* 194 F.Supp. 98, 105 (D.D.C. 1961) ("the ascertainment of the intent of the parties is gathered from the language of the contract and the attendant circumstances at the time of entering the contract") (citations omitted); *Choctaw Nation v. United States,* 121 F.Supp. 206, 211, 128 Ct.Cl. 195 (1954) ("It is the duty of the court ... to look not only at the language employed, but to the subject-matter and the surrounding circumstances." (quoting *Choctaw Nation v. United States,* 91 Ct.Cl. 320, 369–70 (Cl.Ct.1940), *cert. denied,* 312 U.S. 695, 61 S.Ct. 730, 85 L.Ed. 1130 (1941))). The Court must also determine what a reasonable person would understand the mayor to have meant under the circumstances. *See S. Williston, Williston on Contracts* § 21 (3d ed.1957). Mayor Barry's statement was not made to Mr. Russell alone, it was made to "several hundred St. Elizabeths Hospital employees," *see* Plaintiff's Opposition, Exhibit 1, at 1. The statement, in the Court's opinion, was in the nature of a campaign promise, which would not have been interpreted by most listeners as creating a legally binding contract. Mr. Russell has presented no evidence of any *personal* representations by the mayor that his specific appointment would be converted to permanent status.

The Court thus finds that not only was it unreasonable for Mr. Russell to believe that Mayor Barry had made a legally enforceable promise, but also that Mr. Russell had reason to know that the mayor would not intend for his statement to be legally binding. The Court is well aware that a party need not intend to be legally bound in order for a promise to be enforceable, *see Restatement* § 21; however, if parties attach different meanings to a statement, neither will be bound by the other's interpretation unless one of them knows or has reason to know of the other's meaning. *See id.* at § 201. In this case, because Mr. Russell had reason to know that Mayor Barry would not intend for his statement to create a binding contract, there could be no mutual assent and no contract. Accordingly, the Court grants defendants' motion for summary judgment on Count VI.

### E. *Plaintiff's Claim of Intentional Infliction of Emotional Distress*

■ In Count VII of his amended complaint, Mr. Russell alleges that defendants' actions have been "intentional and calculated to cause both pecuniary damages and emotional distress." Amended Complaint at 7. The defendants claim that, as a matter of law, this allegation falls "woefully short" of establishing a cause of action for this tort. Defendants' Memorandum at 27. The Court agrees.

To succeed in proving intentional infliction of emotional distress in the District of Columbia, a plaintiff must show " '(1) "extreme and outrageous" conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff "severe emotional distress." ' " *District of Columbia, et al. v. Patricia Joan Thompson,* 570 A.2d 277, 289–90 (D.C.1990) (quoting *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.) (quoting *Restatement (Second) of Torts* § 46 (1965)), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982)). The standard is very high, applying only to "acts ' "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." ' "

*Id.* at 25 (quoting *Jackson v. District of Columbia*, 412 A.2d 948, 957 (D.C.1980) (quoting *Restatement (Second) of Torts* § 46 comment d)). To determine whether a defendant's conduct is "outrageous," a court must consider "the nature of the activity." *Id.*

According to plaintiff's opposition, Mr. Russell did not know that his employment was temporary and was not told he could do something to retain his employment once he was notified of his impending termination. The record indicates, however, that each of Mr. Russell's "Personnel Action" statements clearly stated the temporary or term nature of his appointment. When hired in 1987 by the federal government, Mr. Russell's personnel action form stated that the appointment would expire on September 30, 1987. When hired by the District on October 1, 1987, Mr. Russell's personnel action form clearly stated "Temporary Appointment" and the box for "Employment Type" was marked with a "3," indicating "Full–Time Temp." When re-hired by the District on October 1, 1988, Mr. Russell's personnel action form stated "Conv To Term Appt" and indicated in the "Remarks" box that it was a "Term Appointment Exp 10/25/89." The Court thus finds it difficult to believe that Mr. Russell did not know his employment was limited in duration.

Mr. Russell also argues that he was not told how to retain his employment. Defendants, however, allege that Mr. Russell's supervisor informed Mr. Russell in the spring of 1989 that all future term employment would be by competition and that his term would expire if he did not apply for a position that would soon be listed in a vacancy announcement. It is undisputed that Mr. Russell became aware of, and applied for, the position of firefighter prior to his termination date. Thus, this Court holds that as a matter of law, even if defendants failed to personally inform Mr. Russell that his employment was temporary and that he should apply for a fire fighter vacancy, this would not rise to the level of "extreme and outrageous" conduct to establish a claim of intentional infliction of emotional distress. Therefore, defendant's motion for summary judgment on Count VII of the amended complaint is granted.

## CONCLUSION

Having carefully reviewed the record in this case, the Court, construing the facts in the light most favorable to Mr. Russell, holds that Mr. Russell has stated a claim for relief under 42 U.S.C. § 1981 for racial discrimination and under 42 U.S.C. § 1983 for retaliation. With respect to these claims there are genuine issues of material facts in dispute that require the Court to deny defendants' motion for summary judgment on these claims. The Court further holds that Mr. Russell has not stated a claim under 42 U.S.C. § 1981 for retaliation, nor has he stated claims for violation of the Mental Health Services Act, breach of contract, and intentional infliction of emotional distress. Accordingly, the Court grants defendants' motion for summary judgment with respect to these counts of Mr. Russell's amended complaint.

## ORDER

In accordance with the memorandum opinion issued herewith and for the reasons stated therein, it is this 24th day of September, 1990,

ORDERED that Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment is DENIED with respect to Counts II and IV of Plaintiff's Amended Complaint and GRANTED with respect to Counts III, V, VI, and VII of Plaintiff's Amended Complaint; and it is

FURTHER ORDERED that Defendants' Motion for a Protective Order is DENIED as moot.